UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:22-CV-1605-WWB-EJK

SURGERY CENTER OF VIERA, LLC,

   *Plaintiff*,

v.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY,

   *Defendant*.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Plaintiff, Surgery Center of Viera, LLC ("SCV"), through undersigned counsel and pursuant to the rules, hereby opposes the Motion to Dismiss ("M2D") [D.E. 55], filed by Defendant, Cigna Health and Life Insurance Company ("Cigna"):

**INTRODUCTION**

This action commenced on September 6, 2022, [D.E. 1]. After the parties' Local Rule 3.01(g) conferral, an agreed Amended Complaint [D.E. 38] was filed on February 13, 2023. The one-count Amended Complaint (Count II of the Complaint) arose out of the incorrect and unreasonably low payment rate regarding compensation owed to the medical provider (SCV) for medical services it provided to the patient / insured (L.R.) under applicable third-party re-pricing contracts. On February 24, 2023, a Motion to Dismiss the Amended Complaint was filed. *See* [D.E. 41]. By Order dated July 12, 2023 [D.E. 49], the Court granted [D.E. 41] in part and denied [D.E. 41] in part. More specifically, the Court (a) denied Cigna's ERISA preemption argument, (b) granted

1

Cigna's argument that the Amended Complaint did not put forth enough fact as to breach of contract elements concerning the third-party re-pricing contracts at issue (namely as it concerns agency), was not clear as to what Defendants breached what, and was not clear as to the application of the PMCS re-pricing contract versus the TRPN re-pricing contract, and (c) *sua sponte* determined that the Amended Complaint was a shotgun pleading because of same; *i.e.*, because of SCV's averring, for examples, that two Defendants breached two different re-pricing contracts and that such lumped two Defendants together. The Court's July 12, 2023, Order [D.E. 49] concluded by granting SCV leave to file the SAC.

The current M2D [D.E. 55] does not make any shotgunning arguments and / or related factual confusion arguments as to Defendants at play or third-party re-pricing contracts at play. Rightly so, the SAC was careful to address each Amended Complaint deficiency identified by the Court's July 12, 2023, Order [D.E. 49]: (a) the SAC was careful to remove argument (there is certainly, at the very least, no "legal argument" made in Paragraphs 21-26 of the SAC and related footnotes and exhibits, which are the averments that the present M2D revolves around), (b) the Eversource Defendants were voluntarily dismissed from this action (thereby leaving only one Defendant, Cigna, and no confusion as to the Defendant at play), and (c) the TRPN re-pricing contract was removed from this action (thereby leaving only one re-pricing agreement, PMCS, and no confusion as to the re-pricing contract at play). And, so, the current M2D now only argues that SCV's SAC does not include enough factual averment to state a cause of action under the PMCS re-pricing contract; *i.e.*, argues that Ex. C of the SAC (the PMCS re-pricing contract brokered with SCV by PMCS at Cigna's behest) cannot bind Cigna (the principal in the Cigna /

PMCS agency relationship) under agency principles.

For the reasons discussed in greater detail below, the SAC includes quite enough factual averment (namely Paragraphs 21-26 and related footnotes and exhibits) concerning the viability of the PMCS (the agent) re-pricing contract to this SCV (the "good faith" relying party) action against Cigna (the principal). The SAC should accordingly survive at least this procedurally early dismissal stage that is not supposed to involve the evidentiary deep-dive associated with summary judgment proceedings, especially considering SCV has not been afforded any opportunity to obtain germane discovery from Cigna.

## **MEMORANDUM OF LAW**

*A.*  *Legal Standard*

As to Rule 12 motions to dismiss, courts are to "accept the allegations in the Complaint as true, construing them in a light most favorable to the plaintiff. … Motions to dismiss are only granted 'when the movant demonstrates beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Young v. Fleming*, 146 Fed.Appx. 393, 394-395 (11th Cir. 2005) (internal citations omitted); *Meeks v. Murphy Auto Group, Inc.*, No. 8:09-cv-1050-T-TBM, 2009 WL 3669638 at *3 (M.D. Fla. 10/30/09) (motion to dismiss "tests the legal sufficiency of a Complaint"); *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, No. 6:05-cv-1285-Orl-19DAB, 2006 WL 1640698 at *5 (M.D. Fla. 6/9/06) (trial court "is … limited to examining the four corners of the Complaint" as to defendant's "very high burden" (internal citations omitted)).

> 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' While a Complaint attacked by a … motion to dismiss does not need detailed factual allegations,

> *… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do … . Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the Complaint are true (even if doubtful …).*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A high bar must be cleared for dismissal, depriving the plaintiff of its day in court – dismissal is the ultimate sanction reserved for aggravating circumstances. The current "failure to provide enough flesh to the bones of a breach of contract cause of action" M2D does not clear the bar, SCV should not be sanctioned *via* dismissal.

### B. The SAC Includes More Than Enough Factual Averment Concerning The "Apparent Authority" Creating The Agency Relationship Between Cigna And PMCS That Makes The PMCS Re-Pricing Contract Actionable Against Cigna

At times throughout Middle District of Florida litigation, SCV has been riddled by the back-and-forth of various defense counsel arguments (and certain Court orders) as to the issue of SCV's complaints saying too much versus saying too little. When SCV has attempted to say more (because SCV knows exactly what defense counsel will argue, it has been the identical dismissal arguments for five or six or seven years), SCV gets scolded by the Court for saying too much. When SCV has attempted to say less pursuant to such scolding, SCV is met with arguments that it has said too little. This conundrum is again unfolding in this action; but, be that as it may, contrary to what Cigna's lawyers argue (not factually demonstrate) in the current M2D (that SCV's SAC remains too thin on factual averments concerning the actionability of the PMCS re-pricing contract against Cigna in this lawsuit), SCV's SAC includes more than enough factual averments concerning the viability of the PMCS contract in this action; *i.e.*, SCV's SAC does not fail

4

to state a breach of PMCS contract action against Cigna.

Preliminarily, there is this Court's precedent as to whether SCV's complaints have said enough concerning stating a breach of the PMCS contract cause of action against the carrier, which such precedent should not be ignored in the instant motion practice. This Court has correctly determined in the past that SCV's complaints have averred enough on this issue, and now the SAC includes even more factual averments (as compared to past SCV complaints that have rightly survived failure to state cause of action attacks) concerning the viability of the PMCS re-pricing contract in actions advanced against carriers (Cigna, here).

One of the Judge Berger orders that undersigned counsel shared with defense counsel in the conferral process here holds, in part, as follows:

> Defendants move to dismiss SCV's state law claims arguing that those state law claims are defensively preempted by ERISA and, alternatively, fail as a matter of law. *In light of previous holdings on essentially identical facts, this Court finds neither of these arguments persuasive. SCV v. UHC*, 465 F. Supp. 3d 1211, 1222 (M.D. Fla. 2020); *SCV v. Cigna*, No. 6:19-cv-2110-Orl-22DCI, 2020 WL 686026, at *5-6 (M.D. Fla. Feb. 11, 2020); *SCV v. UHC*, No. 6:19-cv-926-Orl-78DCI, 2020 WL 13389232, at *4 (M.D. Fla. Mar. 18, 2020) (Berger, J.)

*SCV v. UHC, et al*, No. 6:22-cv-236-WWB-EJK, [D.E. 24] (M.D. Fla. Dec. 23, 2022) (emphasis added), attached hereto as Exhibit 1 and fully incorporated herein by reference. Prior Judge Berger orders (*see, e.g.,* Ex. 1) that addressed the identical argument that Cigna makes in the current M2D have rightly concluded (in the purported "failure to state a cause of action" vein) that SCV's complaints said enough to form the basis for a breach of PMCS contract action, especially at the early dismissal stage. But, again, even in light of this Court's past favorable rulings on this point, the SAC endeavored to include a lot more factual averment concerning the application of the PMCS re-pricing

contract here.

The elements of a breach of contract action are as follows: "(1) a valid contract; (2) a material breach; and (3) damages." *R. Plants, Inc. v. Dome Enter., Inc.*, 221 So.3d 752, 754 (Fla. 3d DCA 2017) (internal citation omitted). Paragraphs 21-26 (and associated footnotes and exhibits) of the SAC are what the present debate revolves around. And, to be clear, the present debate is this – Cigna is arguing that nothing about PMCS' actions with SCV (detailed in Paragraphs 21-26, and especially in SAC Ex. F) bound Cigna and that the SCV / PMCS paperwork that SCV possesses (SAC Ex. C) accordingly does not constitute a contract that could be enforced against Cigna. What Paragraphs 21-26 (and associated footnotes and exhibits) show by way of SCV's factual averments (which are to be accepted as true at this juncture and are not at all *factually* contradicted by the M2D, just "contradicted" by way of lawyer *argument*) is, *at the very least*, the "apparent authority" at play between PMCS and Cigna in PMCS' brokering a re-pricing structure with SCV at Cigna's behest. As to "apparent authority," Florida law is as follows:

> It is axiomatic that an agent has the authority to bind a principal. Even where there is no express agent/principal relationship, a principal may be bound by the acts of an agent acting with apparent authority. In *Stiles v. Gordon Land Co.*, 44 So.2d 417, 421–22 (Fla. 1950), our supreme court explained apparent authority as follows:
>
>> The authority of an agent to bind a principal may be *real* or it may be apparent only, and members of the public acting in good faith may rely on either, unless in the case of *apparent* authority the circumstances are such as to put a reasonable person on inquiry. By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third person who in good faith relies on such representations or actions.

*Clayton v. Poggendorf,* 237 So. 3d 1041, 1045-1046 (Fla. 4th DCA 2018) (emphasis in original), also citing (in "see also" fashion) *Denton v. Good Way Oil 902 Corp.*, 48 So.3d 103, 107 (Fla. 4th DCA 2010).

"Apparent authority arises from the authority a principal knowingly tolerates or allows an agent to assume, or which the principal by his actions or words holds the agent out as possessing." *Id.* at 1046 (citing *Regions Bank v. Maroone Chevrolet, L.L.C.*, 118 So.3d 251, 255 (Fla. 3d DCA 2013). "Apparent agency exists only where the principal creates the appearance of authority." *Id.* (citing *Regions Bank*).

In *Clayton*, Clayton (Cigna here) asserted "that he, as the principal, did nothing to give Tittle [PMCS here] apparent authority to act for him as his agent [with respect to interactions with Poggendorf and Thomas, SCV here]." *Id.* at 1046.

> The trial court found to the contrary, and there [was] competent substantial evidence to support its judgment. As Poggendorf and Thomas point[ed] out, four notices of default were sent in six months prior to the July default which triggered the acceleration. After attorney Maier sent the January 2016 default notice to attorney Tittle, the principal (Clayton) responded by wiring the required amounts. Tittle followed this payment up with an email to Maier to make sure the payment was received. After each of the next three notices was sent to Tittle, Clayton acted appropriately by making the required payment within the five day cure period, thus showing by his conduct that Tittle had authority to receive the notice on his behalf. Each email specifically asked Tittle to advise Maier if he was no longer representing Clayton. Thus, whether or not Tittle was formally retained to represent him, by Clayton's conduct in curing the default each time a notice of default was sent to Tittle, he vested Tittle with the authority to accept the notices of default on which Poggendorf and Thomas relied in good faith.

*Id.* The *Clayton* court continued:

> Apparent authority rests on the doctrine of estoppel. Estoppel requires: 1) representation of a material fact by the party estopped (Clayton) to the party claiming the estoppel (Poggendorf and Thomas) that is contrary to the fact later asserted by the estopped party; 2) reliance on that representation by the party claiming the estoppel; and 3) the party claiming estoppel detrimentally changed their position due to such reliance. *Zurstrassen v.*

7

> *Stonier*, 786 So.2d 65, 68–69 (Fla. 4th DCA 2001). Clayton, by his conduct in allowing Tittle to accept the notices of default, represented that the notices of default complied with the Settlement Agreement. Poggendorf and Thomas clearly relied on that representation by continuing to send the email notices to Tittle. Finally, Poggendorf and Thomas changed their position by not sending the notices directly to Clayton. The trial court did not err in finding that Poggendorf and Thomas had complied with the provisions of default under the settlement agreement.

*Id.*[1] Here, Cigna is Clayton, PMCS is Tittle, and SCV is Poggendorf / Thomas.

Here, by willing affixing its name to the PMCS re-pricing plan "payer list," *see* SAC [D.E. 51], Ex. C, Cigna represented to SCV (at least under principles of "apparent authority") that PMCS had Cigna's authority to broker, as Cigna's agent, the 80% / 100% re-pricing formula specified in Ex. C of the SAC on Cigna's behalf. Put differently, Cigna's willing affixation of its name to the PMCS "payer list" constituted "actions or words" "holding [PMCS] out as possessing" Cigna's "apparent authority. *See Clayton* at 1046, *supra*, citing *Regions Bank*. Put differently, Cigna's willing affixation of its name to the PMCS "payer list" constituted the "principal['s] [Cigna's] creat[ing] the appearance [to SCV] of [PMCS] authority [that binds Cigna]." *Id.* SCV had every "good faith" reason to expect that Cigna's willing affixation of its name to the PMCS "payer list" presented to SCV meant that Cigna would actually honor the 80% (non-implant HCFA line-items) / 100% (implant HCFA line-items) re-pricing agreement brokered by Cigna's agent, PMCS; *i.e.*, SCV's "good faith" reliance on such was not misplaced. Indeed, why would SCV have had any rationale reason to expect otherwise?

---

[1] *See also* Garner, Bryan A., *Black's Law Dictionary*, 247 (2d Pocket Ed., 2001), defining equitable estoppel as "preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way."

Cigna's M2D argues that SCV's SAC falls short because contractual paperwork between Cigna and PMCS is not attached to the SAC (paperwork that SCV cannot possibly possess pre-discovery, *see, e.g.,* [D.E. 51] at n. 8). But, "[e]ven where there is no express agent/principal relationship, a principal [Cigna] may be bound by the acts of an agent [PMCS] acting with apparent authority." *Clayton* at 1045, *supra*.

Further as to Cigna's conduct creating apparent authority at the very least, Cigna accepted SCV's claim submission package (SAC [D.E. 51], Ex. D, starting with a cover letter from SCV directly to Cigna making clear that SCV was making the subject claim under the PMCS contract and making clear SCV's "good faith" expectation that the claim would accordingly be paid out under the 80% / 100% re-pricing framework set forth in such contract) advanced under the PMCS re-pricing framework and partially paid out (*i.e.*, performed, in part at least) on the PMCS-grounded claim. In the claim acceptance and partial payment process, there was zero utterance from Cigna to SCV (constituting estoppel by silence, at the very least, with estoppel principles underlying apparent authority principles)[2] that SCV had somehow done wrong by submitting the claim directly to Cigna and had somehow erred in its "good faith" reliance that Cigna would honor the 80% / 100% re-pricing framework established by the vendor / agent (PMCS) who Cigna sent out to SCV … SCV did not randomly invite PMCS to visit SCV to broker a re-pricing agreement, the insurance company (Cigna) sent PMCS out into the medical provider community for that. *See, e.g.,* [D.E. 51], Ex. F. These arguments (that SCV had done

---

[2] *See* Garner, Bryan A., *Black's Law Dictionary*, 247 (2d Pocket Ed., 2001), defining "estoppel by silence" as: "Estoppel that arises when a party is under a duty to speak but fails to do so." *Id.*

wrong or erred in its reliance) now made by Cigna's attorneys in the M2D are exactly that – arguments made by attorneys, with no factual support.

Cigna's aforementioned conduct (*e.g.,* sending PMCS out into the medical community with authority to broker a re-pricing agreement with SCV, allowing for the Cigna name to be affixed to the PMCS "payer list" provided to SCV, Cigna's accepting SCV's PMCS-grounded claim package and partially paying out on such with zero mention of the supposed waywardness of SCV's "good faith" expectation for Cigna to pay out at the PMCS brokered rates) estops Cigna (under Florida law concerning apparent authority / agency) from now arguing that the PMCS re-pricing contract that PMCS brokered with SCV at Cigna's direction cannot apply. Clayton's (Cigna's) cures of default notices sent by Poggendorf and Thomas (SCV) directly to Clayton (Cigna) rather than to Tittle (PMCS) without mention that Poggendorf and Thomas should have for some reason filtered such notices through the agent with apparent authority (Tittle / PMCS) rather than the bound principal payor (Clayton / Cigna) is the exact same thing as Cigna's partial payment of SCV's PMCS-grounded claim here.

So, yes, even under just "apparent authority" principles pertaining to agency and underlain by estoppel principles, the SAC has put forth enough factual averments to establish that Cigna is bound by the PMCS re-pricing contract that PMCS brokered at Cigna's behest. Just as Clayton was not allowed to wiggle out from underneath the agreement that Tittle brokered with Poggendorf and Thomas, so too should Cigna not be allowed to wiggle out from underneath the agreement that PMCS brokered with SCV. Tittle interacted with Poggendorf and Thomas under Clayton's apparent authority (thereby, under Florida law, making Tittle the agent binding the principal Clayton, and

making the agreement brokered by Tittle on Clayton's behalf binding on Clayton with respect to Poggendorf and Thomas), just as PMCS interacted with SCV under Cigna's apparent authority. Perhaps Cigna might someday be able to put forth actual evidence that completely blows up the application of "apparent authority," but, for now, all Cigna does is put forth legal argument in a M2D that does not even mention "apparent authority" principles that are alive and well in Florida per the above case law and that create the agency relationship between PMCS and Cigna that make the PMCS contract (attached to the SAC as Exhibit C) actionable here against Cigna.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests entry of an Order **(1)** entirely denying the M2D [D.E. 55] filed by Defendant and compelling Defendant to answer the Second Amended Complaint posthaste, or **(2)** awarding SCV any other relief the Court deems equitable, just, or proper, such as another opportunity for complaint amendment (since only one amendment has unfolded in this action pursuant to Court order) if the Court somehow finds the SAC averments lacking (under a dismissal "burden of proof" wherein SCV's factual averments are to be accepted as true) in predicate for (at the very least) the apparent authority that creates a principal / agent relationship between Cigna and PMCS, which such relationship binds Cigna to the 80% / 100% re-pricing contract that PMCS brokered with SCV at Cigna's behest and which such contract SCV reasonably relied on in "good faith" in advancing its PMCS-grounded claim directly with Cigna in "good faith."

Dated: August 31, 2023.

Respectfully Submitted,

**POLI, MOON & ZANE, PLLC**
7016 Charleston Shores Blvd., #8
Lake Worth, Florida 33467
(602) 857-8180 (o); (561) 834-2504 (f)

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@pmzlaw.com
heatherc@pmzlaw.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2023, I electronically filed the foregoing documents with the Clerk of the Court by using CM / ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**